EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Xedric Huriel Díaz Santiago<br><br>Recurrido<br><br>v.<br><br>Pontificia Universidad Católica de Puerto Rico; Fulano de Tal; Aseguradora ABC<br><br>Peticionarios | Certiorari<br><br>2021 TSPR 79<br><br>207 DPR ____ |

Número del Caso:  CC-2020-254

Fecha: 7 de junio de 2021

Tribunal de Apelaciones:

    Panel I

Abogado de la parte peticionaria:

    Lcdo. Enrique Álvarez Michell

Abogada de la parte recurrida:

    Lcda. Pilar Muñoz Nazario

Materia: Derecho Laboral- La divulgación de los récords médicos de unas estudiantes que no son parte en un pleito por despido injustificado instado al amparo del procedimiento sumario dispuesto en la Ley Núm. 2 de 17 de octubre de 1961 constituye una grave injusticia y, por tanto, es revisable interlocutoriamente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Xedric Huriel Díaz Santiago<br><br>Recurrido<br><br>v.<br><br>Pontificia Universidad Católica de Puerto Rico; Fulano de Tal; Aseguradora ABC<br><br>Peticionarios | CC-2020-254 | Certiorari |

Opinión del Tribunal emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 7 de junio de 2021.

En esta ocasión, nos corresponde determinar si constituye una grave injusticia y, por ende, es revisable interlocutoriamente la divulgación de los récords médicos de unas estudiantes que no son parte en el pleito por despido injustificado instado por un funcionario y alegado hostigador en contra de su expatrono. Lo anterior, en el contexto de la Ley de Procedimiento Sumario de Reclamaciones Laborales, infra. En caso afirmativo, nos corresponde, entonces, precisar el alcance de tal divulgación, según lo dispuesto en la Family Educational Rights and Privacy Act of 1974, infra, y sus pronunciamientos recientes en cuanto a la confidencialidad de los récords médicos en las instituciones educativas.

Con ello en mente, procedemos a exponer el trasfondo fáctico y procesal que originó la controversia ante nos. Veamos.

I

El 19 de enero de 2020, el Sr. Xedric Huriel Díaz Santiago (señor Díaz Santiago) presentó una querella en contra de la Pontificia Universidad Católica de Puerto Rico (PUCPR) al amparo del procedimiento sumario dispuesto por la Ley de Procedimiento Sumario de Reclamaciones Laborales, infra. En la querella, éste señaló que laboró en el Centro de Consejería Profesional de la PUCPR desde el 1993 hasta el 2019, que fungió como Consejero en sus últimos años de empleo y que, por alegaciones falsas e infundadas, fue despedido. Por ello, solicitó la indemnización correspondiente a tenor con la ley de despido injustificado.

Por su parte, la PUCPR contestó la correspondiente querella y negó que el despido del señor Díaz Santiago fuese injustificado. En cambio, alegó que el señor Díaz Santiago fue objeto de tres (3) querellas por hostigamiento sexual presentadas por distintas estudiantes. La PUCPR señaló que las primeras dos (2) querellas ocurrieron en el 2010 y que, luego de concluir la correspondiente investigación administrativa, se le advirtió mediante carta que, de repetirse y comprobarse nuevamente la conducta, sería despedido automáticamente.

La PUCPR detalló que en el 2018, hubo una tercera querella de hostigamiento sexual en contra del señor Díaz

Santiago por parte de una estudiante. A su vez, manifestó que tal asunto fue referido al Comité Institucional de Hostigamiento Sexual (Comité) para la investigación de rigor y éste concluyó de forma unánime que el señor Díaz Santiago incurrió en conducta constitutiva de hostigamiento sexual. Así, la PUCPR sostuvo que el despido fue justificado.

Según expuso la PUCPR, dicho Comité concluyó, además, que el señor Díaz Santiago llevó a cabo contacto físico no deseado y que éste se dirigió a la estudiante con palabras de alto contenido sexual que también insinuaban su deseo de establecer una relación amorosa. El Comité reconoció que el funcionario universitario, mediante su testimonio, negó las alegaciones de la querella. Cabe señalar, sin embargo, que dicho testimonio no le mereció credibilidad al Comité. A raíz de ello, el señor Díaz Santiago fue despedido.

Junto con el emplazamiento, el señor Díaz Santiago cursó un pliego de interrogatorios y producción de documentos a la PUCPR. En lo que nos concierne, éste específicamente solicitó lo siguiente:

> 52. Provea copia del expediente universitario completo de la joven [GCB].
> 53. Provea copia de todo y cualquier expediente de la joven [GCB].
> 61. Provea copia completa del expediente de la joven [GCB] en la Oficina de Consejería de la PUCPR, incluyendo durante el tiempo que la atendió el Sr. Díaz, antes y después.
> 62. Indique qué personas atendieron a la joven [GCB] en la Oficina de Consejería de la PUCPR.
> 63. Indique qué condiciones, si alguna, tiene la joven [GCB].

64. Indique si, en alguna ocasión, la joven [GCB] fue referida a ayuda psicológica.[1]

Así pues, el 6 de marzo de 2020, la PUCPR notificó su contestación al descubrimiento de prueba. En dicha contestación, objetó lo antes aludido y fundamentó la negación como sigue:

52. Se objeta esta pregunta. El expediente de cada estudiante es confidencial y divulgar su contenido está prohibido por la Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g; 34 CFR Part 99).

53. Se provee copia de la querella presentada por la estudiante, así como el informe investigativo y documentos que forman parte de la investigación de la querella de hostigamiento sexual presentada por la estudiante. Anego G. Los expedientes académicos, incluyendo el del Centro de Consejería Profesional, son confidenciales y privilegiados y divulgar su contenido está prohibido por la Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g; 34 CFR Part 99).

61. Se objeta por formar parte de un expediente privilegiado y confidencial.

62. Se objeta por formar parte de un expediente privilegiado y confidencial.

63. Se objeta por formar parte de un expediente privilegiado y confidencial.

---

[1] Apéndice de certiorari, Primer pliego de interrogatorio y producción de documentos, págs. 57-58. A fin de proteger la intimidad y los derechos de las estudiantes afectadas, hemos procedido a limitar su identidad a siglas.

64. Se objeta por formar parte de un expediente privilegiado y confidencial.[2]

Ante tal objeción, el 7 de abril de 2020, el señor Díaz Santiago recurrió al Tribunal de Primera Instancia y presentó una moción solicitando que se ordenara a la PUCPR a que proveyera la información y documentación solicitada. En dicha moción solicitó, por primera vez, los expedientes completos que obran en la Oficina de Consejería de la PUCPR de las dos (2) estudiantes que se querellaron contra él en el año 2010.

El Tribunal de Primera Instancia, **sin haber expirado los términos para que la PUCPR expresara su posición al respecto y sin contar con una certificación del señor Díaz Santiago que acreditara aquellos esfuerzos realizados extrajudicialmente en aras de lograr que la PUCPR cumpliera con el descubrimiento de prueba solicitado,**[3] declaró <u>ha lugar</u> la referida moción y ordenó la producción de la información y documentación solicitada, incluyendo los expedientes de

---

[2] Apéndice de <u>certiorari</u>, <u>Contestación a interrogatorio</u>, págs. 75, 77.

[3] Nótese que, con este proceder, el señor Díaz Santiago incumplió con lo dispuesto en la Regla 34.1 de Procedimiento Civil de 2009, <u>supra</u>. Esta regla permite la intervención del foro de primera instancia en controversias relacionadas al descubrimiento de prueba si la parte promovente detalla, mediante certificación, aquellos "esfuerzos razonables [realizados], con prontitud y de buena fe, para tratar de llegar a un acuerdo con el abogado de la parte adversa para resolver los asuntos que se plantean en la moción y que éstos han resultado infructuosos". 32 LPRA Ap. V.

las primeras dos (2) estudiantes que previamente se habían querellado en contra del señor Díaz Santiago.[4]

Inconforme, la PUCPR acudió al Tribunal de Apelaciones mediante recurso de certiorari y, en esencia, señaló que el foro de primera instancia erró al: (1) declarar con lugar la referida orden sin antes brindarle oportunidad de presentar su oposición y sin contar con una certificación que acredite que, en efecto, se realizaron gestiones extrajudiciales razonables y de buena fe para la resolución

---

[4]Apéndice de certiorari, Orden, pág. 85. Específicamente, el Tribunal de Primera Instancia ordenó lo siguiente:

> 1. Provea copia completa del expediente de la joven [GCB] en la Oficina de Consejería de la PUCPR, incluyendo durante el tiempo que la atendió el Sr. Díaz, antes y después.
> 2. Indique qué personas atendieron a la joven [GCB] en la Oficina de Consejería de la PUCPR.
> 3. Indique qué condiciones, si alguna, tiene la joven [GCB].
> 4. Indique si, en alguna ocasión, la joven [GCB] fue referida a ayuda psicológica.
> 5. Provea copia del expediente de la joven [GCB] en la Oficina de [A]yuda [P]sicológica de la PUCPR.
> 6. Provea copia completa del expediente de la joven [NVC] en la Oficina de Consejería de la PUCPR, incluyendo durante el tiempo que la atendió el Sr. Díaz, antes y después.
> 7. Provea copia completa del expediente de la joven [NGR] en la Oficina de Consejería de la PUCPR, incluyendo durante el tiempo que la atendió el Sr. Díaz, antes y después. Íd.

de la controversia, según exigido por nuestro ordenamiento procesal, y (2) ordenar el descubrimiento de lo solicitado, pues dicha información forma parte del expediente educativo de las estudiantes y su confidencialidad es ordenada por la Family Educational Rights and Privacy Act of 1974, infra.

El 30 de junio de 2020, el Tribunal de Apelaciones emitió una resolución en la que denegó la expedición del recurso de certiorari. Fundamentó su denegatoria en que, en este caso, no estaba presente el tipo de situación extrema que justificara el apartarse de la norma general de no revisar determinaciones interlocutorias en procedimientos tramitados bajo la Ley de Procedimiento Sumario de Reclamaciones Laborales, infra. Igualmente, el foro apelativo intermedio sostuvo que "no surg[ía] del récord que lo actuado por el TPI gener[ara] un 'fracaso de la justicia', de tal modo que est[uviesen] ante una situación extrema, o una grave injusticia, que amerit[ara su] intervención".[5]

En desacuerdo con tal determinación, la PUCPR comparece ante este Tribunal mediante un recurso de certiorari en el cual, en síntesis, reitera los argumentos antes expuestos.

---

[5]Apéndice de certiorari, Resolución, pág. 21. Al respecto, el Honorable Juez Pagán Ocasio emitió un voto en el que hizo constar una advertencia a los efectos de que el señor Díaz Santiago incumplió con el requisito procesal que exige que, previo a solicitar la intervención de un tribunal en una controversia entre las partes en el proceso de descubrimiento de prueba, la parte promovente debe presentar una certificación en la cual acredite las gestiones extrajudiciales razonables y de buena fe realizadas para la resolución de la controversia. Íd., págs. 22-23.

Con el beneficio de la comparecencia de las partes, nos encontramos en posición de resolver. Esto, no sin antes exponer el derecho aplicable a la controversia aquí reseñada.

## II

## A.

La Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA secs. 3118-3132 (Ley Núm. 2), introdujo a nuestro ordenamiento jurídico un trámite especial y expedito para atender las querellas relacionadas con disputas laborales presentadas por empleados u obreros en contra de sus patronos. 32 LPRA sec. 3118. Véase, además, León Torres v. Rivera Lebrón, 204 DPR 20, 30-31 (2020) (citando a Ruiz Camilo v. Trafon Group, Inc., 200 DPR 254 (2018)). Debido a la celeridad con la que deben encauzarse estos procesos judiciales, se alteraron ciertos términos y condiciones, los cuales, de ordinario, rigen la litigación civil en nuestro ordenamiento jurídico procesal. Cónsono con ésto, la propia Ley Núm. 2 dictamina que en los casos que se tramiten con arreglo a dicho estatuto, "se aplicarán las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con las disposiciones específicas de las mismas o con el carácter sumario del procedimiento establecido por esta ley". 32 LPRA sec. 3120. Es decir, se recurrirá a las Reglas de Procedimiento Civil cuando éstas no contravengan lo

dispuesto por la Ley Núm. 2 o prolonguen innecesariamente el carácter sumario del procedimiento.

Como es sabido, bajo esta ley especial se han establecido una serie de limitaciones con el fin de asegurar el trámite expedito de las reclamaciones laborales. Así las cosas, la Ley Núm. 2 consigna expresamente los mecanismos de revisión disponibles en los procesos que regula. 32 LPRA sec. 3127. Nótese, sin embargo, que de una lectura de ésta no surge que la Asamblea Legislativa haya tenido la intención expresa de viabilizar un mecanismo de revisión directa de las resoluciones interlocutorias.

Precisamente, en Dávila, Rivera v. Antilles Shipping, Inc., 147 DPR 483 (1999), este Tribunal tuvo la oportunidad de examinar si la presentación de un recurso de certiorari contra una resolución interlocutoria dictada en un proceso tramitado bajo la Ley Núm. 2 era contraria al carácter sumario de la ley. Luego de evaluar el texto de la ley y su historial legislativo, este Tribunal concluyó que, de ordinario, la revisión de resoluciones interlocutorias era contraria al carácter sumario del procedimiento laboral y que, por tanto, la facultad de los tribunales apelativos al revisar dichas resoluciones es limitada. Íd., págs. 496-497. En consecuencia, como norma general, la parte que pretenda impugnar resoluciones interlocutorias en un procedimiento bajo la Ley Núm. 2 deberá esperar hasta que se dicte sentencia final para entonces instar un recurso a base del error alegado.

No obstante, la norma impuesta no fue absoluta. En Dávila, Rivera v. Antilles Shipping, supra, reconocimos que esta norma de autolimitación de revisión contempla una serie de instancias en las que una resolución interlocutoria sí es revisable por este Tribunal Supremo o por el Tribunal de Apelaciones, según corresponda. A estos efectos, a modo de excepción, concluimos que los tribunales apelativos deben mantener y ejercer su facultad para revisar mediante certiorari aquellas resoluciones interlocutorias dictadas en un procedimiento sumario tramitado a tenor con la Ley Núm. 2 en las siguientes instancias: (1) cuando el foro primario haya actuado sin jurisdicción; (2) en situaciones en las que la revisión inmediata dispone del caso por completo, y (3) **cuando la revisión tenga el efecto de evitar una grave injusticia**. Íd., pág. 498; Ortiz v. Holsum, 190 DPR 511, 517 (2014). En estas instancias, el carácter sumario y la celeridad que caracterizan a los procedimientos tramitados bajo la Ley Núm. 2 ceden y los foros apelativos pueden revisar determinada resolución interlocutoria.

Examinemos si la controversia que nos ocupa y el alcance del dictamen interlocutorio recurrido tiene un efecto contra la parte peticionaria y contra terceros que hace necesaria la revisión para evitar una grave injusticia.

**B.**

Sabido es que la Constitución de Puerto Rico declara como un derecho fundamental la inviolabilidad de la dignidad de todo ser humano. A la luz de lo anterior, ésta proclama

nuestra igualdad ante la ley y, por consiguiente, prohíbe el discrimen por, entre otras, razón de sexo. Const. ELA, Art. II, Sec. 1, LPRA, Tomo 1. Asimismo, la Constitución protege contra ataques abusivos a la honra, a la reputación y a la vida privada o familiar. Íd., Art. II, Sec. 8.

En consecución de tales mandatos constitucionales, la Asamblea Legislativa promulgó una serie de leyes para prohibir el discrimen por razón de sexo, proteger a la ciudadanía del discrimen por razón de sexo en la modalidad de hostigamiento sexual e imponer responsabilidad civil por tales conductas. Así las cosas, en el 1998, se aprobó la Ley para Prohibir el Hostigamiento Sexual en las Instituciones de Enseñanza, Ley Núm. 3-1998, 3 LPRA secs. 149a-149k. Según la Exposición de Motivos de esta ley, el hostigamiento sexual en las instituciones educativas "se manifiesta principalmente en la relación profesor-estudiante y mayormente contra mujeres" con conductas variadas que van desde hostigamiento de tipo verbal, comentarios impropios, roce corporal y hasta presiones e invitaciones con contenido sexual. Ley Núm. 3-1998, 1998 LPR 6.

Con la aprobación de esta ley, "se reconoció el contexto particular en el que se desarrolla el hostigamiento sexual en las instituciones educativas, así como sus implicaciones particulares en el derecho a la educación". (Énfasis en el original omitido). UPR Aguadilla v. Lorenzo Hernández, 184 DPR 1001, 1015-1016 (2012). De este modo, se estableció "como política pública del Estado velar porque

los [y las] estudiantes -niños [y niñas], jóvenes y adultos [y adultas]- tengan el derecho a realizar sus estudios libres de la presión que constituye el hostigamiento sexual" y así, combatir el efecto detrimental que ocasiona el hostigamiento sexual en la dignidad del ser humano. (Énfasis en el original omitido). Íd., pág. 1016 (citando a 3 LPRA secs. 149a y 149b(a)).

Asimismo, la Ley para Prohibir el Hostigamiento Sexual en las Instituciones de Enseñanza, supra, impone a las instituciones una serie de deberes y responsabilidades en aras de prevenir, desalentar y evitar el hostigamiento sexual en los centros de estudio. 3 LPRA secs. 149g-149i. Entre las medidas que debe cumplir toda institución se encuentra el expresar claramente que tiene una política enérgica en contra del hostigamiento sexual y preparar un reglamento que disponga las responsabilidades, procedimientos y penalidades aplicables para atender las querellas presentadas en este tipo de casos.

Ahora, una vez se suscita un acto de hostigamiento sexual y la víctima presenta una querella, dicha información también pasa a estar regulada por normativa federal aplicable a esta controversia. Veamos.

### C.

La Family Educational Rights and Privacy Act of 1974, 20 USCA sec. 1232g (2010 & Supl. 2015) (Ley FERPA) es una ley federal que tiene como propósito regular y proteger los expedientes académicos de los y las estudiantes, desde el

nivel elemental hasta el universitario, en las instituciones educativas. La Ley FERPA define expedientes educativos como aquellos registros, archivos, documentos, y cualquier otro material que contenga información directamente relacionada con un o una estudiante y que, además, sean mantenidos por una institución educativa o por una persona que actúe en su nombre. Íd., sec. 1232g(a)(4)(A).

Esta ley requiere que todas las instituciones educativas, tanto públicas como privadas, que reciben fondos correspondientes del gobierno federal, sigan ciertos procedimientos con relación a la protección y confidencialidad de estos registros. Íd., sec. 1232g(a)(1). En síntesis, los procedimientos establecen que: (1) los padres de estudiantes menores, y las o los estudiantes adultos, tienen derecho a inspeccionar y revisar los expedientes académicos de sus hijos e hijas y los de éstos mismos, respectivamente,[6] y (2) en general, aunque con varias excepciones, las instituciones educativas no pueden divulgar los expedientes académicos o su contenido sin el consentimiento escrito de los padres, o el de las o los estudiantes adultos, según corresponda.[7] Ello, debido a que,

---

[6] 20 USCA sec. 1232g(a)(1). Generalmente es a los padres a quienes se les reconoce este derecho sobre sus hijos o hijas menores de edad. Sin embargo, los mismos derechos que ostentan los padres son transferidos a sus hijos o hijas mayores de dieciocho (18) años que estudien en una institución postsecundaria. Íd., sec. 1232g(d).

[7] Íd., sec. 1232g(b).

como norma general, los expedientes académicos son documentos privados.

Ahora bien, la Ley FERPA contempla una serie de instancias en las que, como excepción, dicho expediente académico puede ser divulgado sin el consentimiento previo requerido. 20 USCA sec. 1232g(b). Un ejemplo de lo anterior se materializa cuando media una orden judicial o un subpoena a tales efectos. Íd., sec. 1232g(b)(2)(B). En esos casos, la institución educativa puede divulgar información sólo si, antes de dar cumplimiento a lo solicitado, realiza un **esfuerzo razonable** para notificar a los padres o a la o el estudiante adulto, según corresponda, de la información solicitada; ello con el propósito de que éstos últimos puedan solicitar las acciones protectoras que entiendan procedentes.[8] Íd.; 34 CFR sec. 99.31(a)(9)(ii) (2019).

---

[8]Adviértase que la solicitud de las referidas acciones protectoras no estará disponible en aquellos casos en que la orden judicial o el subpoena sea conforme con:

> [1] A Federal grand jury subpoena and the court has ordered that the existence or the contents of the subpoena or the information furnished in response to the subpoena not be disclosed;
> [2] Any other subpoena issued for a law enforcement purpose and the court or other issuing agency has ordered that the existence or the contents of the subpoena or the information furnished in response to the subpoena not be disclosed; or
> [3] An ex parte court order obtained by the United States Attorney General (or designee not lower than an Assistant Attorney General) concerning investigations or

Asimismo, las instituciones educativas ostentan la facultad de solicitar aquellas medidas protectoras adicionales que estimen adecuadas en aras de proteger la privacidad de dichos récords médicos.[9]

No obstante, la Ley FERPA establece unas normas particulares en cuanto a la divulgación de los **récords médicos** de los o las estudiantes de dieciocho (18) años o más que están matriculados en una institución educativa postsecundaria. Así, si su utilización sólo está vinculada con algún propósito médico, los récords médicos no se considerarán parte del expediente académico y, por tanto, no estarán sujetos a la rigurosidad de divulgación exigida por la Ley FERPA.[10] De este modo, dichos récords pueden ser

---

prosecutions of an offense listed in 18 U.S.C. 2332b(g)(5)(B) or an act of domestic or international terrorism as defined in 18 U.S.C. 2331. 34 CFR sec. 99.31(a)(9)(ii)(A-C).

[9]U.S. Dept. of Health and Human Servs. & U.S. Dept. of Educ., Joint Guidance on the Application of the Family Educational Rights and Privacy Act (FERPA) and the Health Insurance Portability and Accountability Act of 1996 (HIPAA) to Student Health Records, pág. 18 (pregunta 20) (4 de junio de 2021), (https://studentprivacy.ed.gov/sites/default/files/resource_document/file/2019%20HIPAA%20FERPA%20Joint%20Guidance%20508.pdf).

[10]La referida disposición lee como sigue:

(B) The term "education records" does not include—

...

(iv) records on a student who is eighteen years of age or older, or is

utilizados en beneficio del o de la estudiante por otros proveedores de atención médica, ya sea dentro o fuera de la institución, sin que sea necesario solicitar su consentimiento expreso para su utilización.[11] Claro está, lo anterior, siempre y cuando la divulgación sea realizada con el propósito de brindar tratamiento médico al o a la estudiante en cuestión, pues, de utilizarse para otro propósito, el récord médico sí se consideraría parte del expediente académico y, como norma general, sólo podría ser divulgado a un tercero previo consentimiento por escrito.[12]

Cabe resaltar que el United States Department of Education, agencia federal encargada de poner en vigor la

---

attending an institution of postsecondary education, which are made or maintained by a physician, psychiatrist, **psychologist**, or other recognized professional or **paraprofessional acting in** [such] capacity, and which are made, maintained, or used only in connection with the provision of treatment to the student, and are not available to anyone other than persons providing such treatment, except that such records can be personally reviewed by a physician or other appropriate professional of the student's choice. (Énfasis suplido). 20 USCA sec. 1232g(a)(4)(B)(iv).

[11]Lynn M. Dagget, The Myth of Student Medical Privacy, Harv. L. & Pol'y Rev. 467, 485 (2020).

[12]Joint Guidance on the Application of the Family Educational Rights and Privacy Act (FERPA) and the Health Insurance Portability and Accountability Act of 1996 (HIPAA) to Student Health Records, supra, pág. 18 (pregunta 20).

Ley FERPA, emitió una carta con el propósito de enmarcar y precisar el tratamiento particular de los récords médicos en las instituciones de educación superior, lo cual incluye a las universidades.[13] La Carta del Departamento de Educación federal, a pesar de no añadir algún requisito distinto a los ya estatuidos en la Ley FERPA, muestra cómo el Departamento de Educación federal evaluará si las instituciones educativas están cumpliendo con sus obligaciones legales, específicamente en la divulgación de los récords médicos estudiantiles.[14] Esto, pues el Departamento de Educación federal entiende que, en aquellas instancias en las que la Ley FERPA autoriza la divulgación del récord médico sin previa autorización, estas excepciones deben ser interpretadas **de manera equilibrada protegiendo la salud, la seguridad y la privacidad** de los y las estudiantes.[15]

En consecuencia, la Carta del Departamento de Educación federal recomienda que las instituciones educativas, al tomar decisiones relacionadas a la divulgación de récords médicos, otorguen gran importancia a la expectativa razonable del estudiantado de que estos récords generalmente no serán compartidos, o se compartirán sólo en escasas

---

[13]U.S. Dept. of Educ., Dear Colleague Letter to School Officials at Institutions of Higher Education, (4 de junio de 2021), (https://studentprivacy.ed.gov/resources/dear-colleague-letter-school-officials-institutions-higher-education) (Carta del Departamento de Educación federal).

[14]Íd., pág. 1.

[15]Íd., pág. 2.

circunstancias y sólo para propósitos relevantes o importantes.[16] De este modo, el Departamento de Educación federal promueve la expectativa que la comunidad estudiantil tiene en cuanto a los recursos ofrecidos por las instituciones, ya que reconoce que "[f]ailure to meet those expectations could deter students from taking advantage of critical campus resources, and could undermine the integrity of the patient-doctor/provider relationship as well as trust between students and the institution".[17] En consecuencia, en aquellas instancias en que sea necesaria la divulgación de los récords médicos, debe limitarse a aquella información que, en efecto, sea pertinente y relevante en el proceso judicial.[18]

Examinado el derecho aplicable, procedemos a resolver la controversia ante nuestra consideración.

### III

Primeramente, no está en controversia que la PUCPR es una institución de enseñanza sujeta a los deberes de prevenir, desalentar y evitar conductas constitutivas de hostigamiento sexual contra sus estudiantes, en cumplimiento con la ley que prohíbe el hostigamiento sexual en las instituciones educativas. Asimismo, tampoco está en duda que a ésta le es de aplicabilidad la Ley FERPA.

---

[16] Íd., págs. 2-3.

[17] Íd., pág. 3.

[18] Íd., pág. 7.

Según expuesto, el señor Díaz Santiago fungía como Consejero en la Oficina de Consejería de la PUCPR. Luego de llevarse a cabo un proceso administrativo que culminó en su despido por haber incurrido nuevamente en conducta constitutiva de hostigamiento sexual, éste presentó una querella al amparo de la Ley Núm. 2 en contra de la PUCPR por haber sido despedido, alegadamente, de manera injustificada.

Así las cosas, como parte del proceso de descubrimiento de prueba, el señor Díaz Santiago cursó un interrogatorio a la PUCPR en el cual, en lo aquí pertinente, solicitó copia del expediente universitario de la estudiante querellante, así como copia del expediente de la joven en la Oficina de Ayuda Psicológica, del expediente en la Oficina de Consejería incluyendo el tiempo antes, durante y después de que fue atendida por éste, y cualquier otro expediente de ésta. Además, requirió que identificaran a las personas que atendieron a la estudiante en la Oficina de Consejería, las condiciones que tiene la joven y si ésta fue referida a ayuda psicológica.

Por su parte, la PUCPR contestó el interrogatorio cursado y, en cuanto a los documentos antes reseñados, proveyó el informe investigativo, copia de la querella, así como otros documentos que formaban parte de la querella de hostigamiento sexual presentada por la estudiante. En cuanto a los demás, objetó su producción por entender,

correctamente, que éstos son confidenciales a tenor con la Ley FERPA.

Posteriormente, el señor Díaz Santiago acudió al Tribunal de Primera Instancia y solicitó que le ordenara a la PUCPR la producción de la información y documentación solicitada. Igualmente, solicitó por primera vez los expedientes completos de la Oficina de Consejería correspondientes a las dos (2) estudiantes que previamente habían radicado querellas por hostigamiento sexual en su contra. En respuesta, el Tribunal de Primera Instancia proveyó ha lugar a la moción y ordenó a la PUCPR a descubrir lo solicitado.

De esta determinación, la PUCPR acudió mediante recurso de certiorari al Tribunal de Apelaciones y, en síntesis, arguyó que erró el foro primario al ordenar la producción de los expedientes de las estudiantes porque éstos son confidenciales y privilegiados, según la Ley FERPA. Ante esto, el Tribunal de Apelaciones denegó intervenir por razón de que este caso está siendo tramitado al amparo del procedimiento sumario dispuesto en la Ley Núm. 2, lo cual limita su intervención sólo a determinadas instancias. Específicamente, el foro apelativo intermedio razonó que no surgía del récord que la orden del foro de primera instancia generara un fracaso de la justicia, de modo que tuvieran ante sí una situación extrema o una grave injusticia que ameritara su intervención. En consecuencia, la PUCPR acude

ante este Tribunal y reitera los planteamientos señalados anteriormente.

Según discutido, la intervención del Tribunal de Apelaciones y de este Tribunal para revisar mediante recurso de certiorari resoluciones interlocutorias dictadas en pleitos tramitados al amparo de la Ley Núm. 2 es limitada por ser contrarias al carácter sumario de la ley. Sin embargo, esta limitación no es irrestricta. Precisamente en Dávila, Rivera v. Antilles Shipping, Inc., supra, delineamos los contornos de esta limitación y establecimos como excepción que, en aquellos casos donde la revisión tenga el efecto de **evitar una grave injusticia**, los foros apelativos debemos ejercer nuestra jurisdicción. Íd., pág. 498.

Siendo ello así, nos encontramos ante un caso en el cual el Tribunal de Apelaciones debió ejercer su jurisdicción y modificar la orden dictada por el Tribunal de Primera Instancia. El principio general que limita la revisión de resoluciones interlocutorias dictadas en procedimientos sumarios bajo la Ley Núm. 2 no es, ni puede ser, una camisa de fuerza en casos como el de autos donde la divulgación de los expedientes implica colocar a la institución educativa entre la disyuntiva de, por una parte, cumplir con el mandato ordenado por la ley federal que garantiza la confidencialidad de los expedientes y, por otra, acatar una orden del tribunal contraria al mandato de

la ley federal.[19] Lo anterior, con el efecto ulterior de, además, potencialmente revictimizar a estas tres (3) estudiantes al colocar en manos de su alegado hostigador información sensitiva y confidencial.

En el caso de autos, no se trata del supuesto clásico en el cual se exige la divulgación del expediente académico, de la querella, del informe de la investigación u otros documentos que formaron parte de la investigación administrativa. En cambio, se trata de la divulgación de la **totalidad** del récord médico de, no tan sólo la alegada víctima que con su querella dio paso a que se iniciara un procedimiento administrativo que culminó eventualmente en el despido del alegado hostigador, sino que, inexplicablemente, la orden también incluyó la divulgación de los récords médicos de las dos (2) alegadas víctimas que

_____

[19]Adviértase que el incumplimiento con tal mandato podría implicar el inicio de una investigación administrativa en contra de la institución educativa para evaluar su cumplimiento con la Ley FERPA. 20 USCA sec. 1232g(b)(2); 34 CFR secs. 99.63-99.64; 33 CFR secs. 99.66. De determinarse que la institución educativa ha incumplido y que ésta no ha tomado medidas para corregir tal incumplimiento, estaría expuesta a, entre otros, lo siguiente:

> (1) Withhold further payments under any applicable program;
> (2) Issue a complaint to compel compliance through a cease and desist order; or
> (3) Terminate eligibility to receive funding under any applicable program.
> 34 C.F.R. § 99.67

se querellaron en contra del señor Díaz Santiago hace más de diez (10) años.

Las circunstancias particulares de este caso exigían que el foro de primera instancia, en lugar de ordenar la divulgación de la totalidad de los récords médicos de las estudiantes en las oficinas de consejería y ayuda psicológica, garantizara las órdenes protectoras correspondientes en aras de salvaguardar la confidencialidad de la información privada contenida en los récords médicos. Ello pues, una orden del tribunal autorizando la divulgación de los récords médicos no puede ser una carta en blanco para que, como ocurrió en este caso, se divulgue la totalidad del récord sin ni tan siquiera constatar su pertinencia en el caso de autos.

**El propio Departamento de Educación federal quien, como mencionamos, es la agencia encargada de poner en vigor la Ley FERPA, se ha expresado en contra de este tipo de acción por parte de los tribunales. De hecho, éste insta a los tribunales a que, en caso de que sea necesaria la divulgación de los récords médicos, éstos ejerzan su debida prudencia y ordenen una divulgación de manera equilibrada y teniendo como norte la protección de la salud, la seguridad y la privacidad de los y las estudiantes. Así pues, como bien razonó el Departamento de Educación federal, limitando la divulgación estrictamente a lo necesario, se fomenta la expectativa de privacidad que tiene la comunidad estudiantil de que dichos récords médicos no serán divulgados o serán**

**divulgados solamente en un puñado de instancias y para propósitos particulares.**

Es conocido que muchas instituciones educativas ofrecen a sus estudiantes acceso a servicios médicos, incluyendo servicios de salud mental. Estos servicios ayudan a promover de manera integral la seguridad y la salud de la comunidad estudiantil. Por este motivo, los y las estudiantes no deben dudar en utilizar los servicios médicos de las instituciones por temor a que la información que compartan con un profesional de la salud sea divulgada en su totalidad fácilmente. Lo contrario daría lugar a que la comunidad estudiantil tenga un disuasivo para presentar denuncias y recibir atención médica debido a la escasez de confidencialidad que gozarían dichos récords médicos.

El escenario ideal insta a que los tribunales realicen una inspección en cámara y evalúen la información o los documentos previo a su divulgación para así, luego de realizar un balance de intereses entre la necesidad de éstos contra la intrusión a la expectativa de privacidad que ostentan los y las estudiantes, ordene la divulgación solamente de lo que estime necesario. Y claro está, siempre y cuando se le dé notificación y oportunidad a los y las estudiantes en cuestión de expresar su posición con anterioridad a la producción de sus récords médicos. Ello, pues como puede apreciarse, es impropio ordenar la producción de la totalidad de los récords médicos

estudiantiles de terceros que ni tan siquiera son partes en la controversia ante el tribunal.

En este caso, el Tribunal de Primera Instancia requirió la divulgación de la totalidad los récords médicos sin haberle antes permitido a la PUCPR ejercer la facultad que ostenta de solicitar las órdenes protectoras correspondientes, de modo que se realizara un adecuado balance que salvaguardara las garantías individuales de las estudiantes, la necesidad del recurrido de defenderse y la obligación de la institución de cumplir con las normas federales que garantizan la privacidad de los récords médicos. Ésto representa un agravio a los derechos constitucionales, estatutarios y reglamentarios de las tres (3) estudiantes que tuvieron el valor de alzar su voz contra el hostigamiento al que alegadamente fueron sometidas. Además, que coloca a la PUCPR en una disyuntiva jurídica innecesaria.

Si bien es cierto que no podemos desvirtuar el carácter sumario del procedimiento laboral instado, el Tribunal de Apelaciones erró al concluir que en el caso de autos no se configuraba alguna de las excepciones a la norma general que limita la revisión interlocutoria en este tipo de pleitos. La actuación del foro de instancia ameritaba la oportuna intervención por parte del foro apelativo intermedio, no sólo para evitar una grave injusticia a la PUCPR y resguardar el cumplimiento de ésta con los parámetros de la FERPA, sino también para garantizar a las tres (3) estudiantes en

cuestión su derecho a la educación, a su dignidad e igualdad ante la ley y a no sufrir ataques abusivos a su honra, a su reputación y a su vida.

**IV**

Por lo anteriormente expuesto, expedimos el auto de certiorari, revocamos al Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para que continúen los procedimientos en el caso de conformidad a lo aquí dispuesto.

Se dictará sentencia de conformidad.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Xedric Huriel Díaz Santiago<br><br>Recurrido<br><br>v.<br><br>Pontificia Universidad Católica de Puerto Rico; Fulano de Tal; Aseguradora ABC<br><br>Peticionarios | CC-2020-254 | Certiorari |

SENTENCIA

En San Juan, Puerto Rico, a 7 de junio de 2021.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se expide el auto de certiorari, se revoca al Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos en el caso de conformidad a lo aquí dispuesto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo